## A02A2006. BOLLINGER v. THE STATE.
## A02A2007. SHAW v. THE STATE.
### (576 SE2d 80)

MIKELL, Judge.

A jury convicted David Bollinger and Terry Shaw of one count of burglary each, OCGA § 16-7-1, for breaking into the Rayner family home with the intent to commit a theft therein. Bollinger was sentenced to a total of fifteen years, with five to be served in confinement and the balance on probation. Shaw was given a twenty-year sentence, with ten years to be served in confinement. Both defendants appeal, arguing that the evidence was insufficient to support their convictions and that the trial court erred in denying their motions for directed verdict and for retrial. Because the defendants raise identical arguments, we will address the two appeals together. We affirm the convictions.

1. In their first and second enumerated errors, Bollinger and Shaw argue that the evidence was insufficient to support their convictions and that the trial court erred in denying their motions for directed verdict.[1]

> The standard of review for the denial of a motion for directed verdict of acquittal is the same as that for reviewing the sufficiency of the evidence to support a conviction. Under that standard we view the evidence in the light most favorable to the jury's verdict and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. . . . Conflicts in the testimony of the witnesses, including the State's witnesses, are a matter of credibility for the jury to resolve.[2]

Applying the above standard to the evidence adduced at trial, we conclude that the evidence was sufficient for a rational trier of fact to find the elements of the crime beyond a reasonable doubt.

OCGA § 16-7-1 (a) provides that "[a] person commits the offense

---

[1] We note that the trial transcript is incomplete. The court reporter represents in the transcript that the tape recorder failed to record a portion of the trial, including Shaw's motion for directed verdict based on insufficient evidence and the court's denial of the motion. There is no record of a motion for directed verdict made by Bollinger. However, in its reply to Bollinger's appellate brief in which he assigns error to the court's denial of his motion for directed verdict, the state does not dispute that such a motion was brought. Because the standards of review are the same for a challenge to the sufficiency of the evidence and the denial of a motion for directed verdict, we will consider both defendants' arguments as challenging the sufficiency of the evidence.

[2] (Citation omitted.) *White v. State*, 250 Ga. App. 783 (552 SE2d 927) (2001). Accord *Pennington v. State*, 254 Ga. App. 837, 838 (564 SE2d 219) (2002), citing *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

of burglary when, without authority and with the intent to commit a felony or theft therein, he enters or remains within the dwelling house of another." Therefore, in order for Bollinger and Shaw to be convicted, the state had to prove (1) that the two men entered the Rayners' home without authority and (2) that they intended to commit a felony in the home.[3]

Viewed in the light most favorable to the jury's verdict, the record shows that George Rayner and his family left their home at approximately 10:45 a.m. on Sunday, February 7, 1999, to attend church. Rayner's 19-year-old son, Eduber, left church to return home at approximately 11:00. Eduber testified that when he pulled into the driveway of his home at 11:10, he noticed a car with two men in it proceeding down the driveway. When Eduber rolled down his window to talk to the occupants, the car sped away. The young man was able to record the license number of the vehicle. He identified a photograph of the car at trial.

Eduber testified that when he approached the house, he observed that the back door appeared to have been kicked in. He immediately called 911. Next, he contacted the preacher at his church, who told Rayner and the rest of the family about the break-in. They returned home. Eduber testified that he found his parents' bedroom in disarray, with drawers open and personal items strewn around the room. None of the other rooms in the house appeared to have been disturbed. Before the police arrived, Rayner, his wife, their four children, and a friend inspected the home. They did not immediately notice that anything had been removed. Law enforcement officers arrived approximately one hour after the family returned home, and they remained at the Rayner home for between 20 and 30 minutes. Later that afternoon, the Rayners discovered that their camcorder was missing from the closet in the master bedroom.

After Eduber called 911 to report the incident, the sheriff's office relayed over the radio information regarding the vehicle Eduber had observed. Henry Samuel O'Neal, a game warden with the Georgia Department of Natural Resources, observed a car with the reported license number in the vicinity of the Rayner home, so he stopped the vehicle to await a sheriff's deputy. Lamar Deems, a patrol officer with the Bartow County Sheriff's Department, proceeded to O'Neal's location. When Deems arrived, he encountered Bollinger and Shaw in the stopped vehicle and placed the two men in his patrol car. Bollinger consented to a search of his vehicle, but Deems did not find a videocamera or any other suspicious items. Bollinger and Shaw were subsequently arrested, and Deems transported them to jail.

[3] See *Watkins v. State*, 249 Ga. App. 302, 303 (1) (548 SE2d 56) (2001).

Marc Barrere, an investigator with the Bartow County Sheriff's Department, interviewed the two men at the jail that same day. After waiving his *Miranda* rights, Bollinger provided two different statements to Barrere. First, Bollinger told the investigator that he drove Shaw to look at some property that Shaw was considering purchasing; that they went to the Rayners' house, which was next door, in search of information about the property; that Shaw knocked on the Rayners' door while Bollinger stayed in the car; and that no one was home, so they drove away. In his second statement, Bollinger told Barrere that he was occasionally hired to cut down trees; that his boss asked him to drive Shaw to look at some trees; that Shaw directed him to the Rayners' house; that Shaw went to the back of the house, while Bollinger stayed in the car; that Shaw was gone for about five minutes; and that Shaw returned to the car and said, "let's go." In his statement, Shaw told Barrere that he and Bollinger drove to the Rayners' home to inquire about the property next door; that he knocked on the door, but no one answered; and that they left.

The state did not present any direct evidence demonstrating that Bollinger or Shaw actually entered the Rayners' home. In fact, Deems testified that law enforcement officers did not attempt to collect fingerprints or any other forensic evidence from the house. Deems further testified that he did not search the wooded area where Bollinger's car was discovered. The videocamera was never recovered.

OCGA § 24-4-6 provides: "To warrant a conviction on circumstantial evidence, the proved facts shall not only be consistent with the hypothesis of guilt, but shall exclude every other reasonable hypothesis save that of the guilt of the accused."[4] It is well settled that "[w]hether or not in a given case circumstances are sufficient to exclude every reasonable hypothesis save the guilt of the accused is primarily a question for determination by the jury."[5] In this case, evidence of Bollinger's and Shaw's presence in the Rayners' driveway during the time in which the house was allegedly burglarized, along with evidence that they fled the scene and subsequently provided inconsistent statements to Investigator Barrere, authorized the jury to find that the defendants were guilty of burglary. Accordingly, the evidence was sufficient, and the convictions must be affirmed on this ground.

---

[4] See also *Smith v. State*, 257 Ga. 381, 382 (359 SE2d 662) (1987); *Pope v. State*, 240 Ga. App. 803, 804-805 (1) (522 SE2d 291) (1999).

[5] (Citation omitted.) *Henderson v. State*, 170 Ga. App. 170 (316 SE2d 814) (1984). See also *Harris v. State*, 222 Ga. App. 56, 58 (2) (473 SE2d 229) (1996); *Estep v. State*, 154 Ga. App. 1 (267 SE2d 314) (1980).

2. Next, Bollinger and Shaw contend that the trial court erred in denying their motions for retrial, because they were sentenced by a judge who did not preside over the trial, and the trial transcript was incomplete.[6] Significantly, the appellate record does not contain Bollinger's and Shaw's motions for retrial or the court's ruling. Nor does it reflect oral motions for retrial by either of the defendants. Therefore, we have no way of knowing what arguments were raised or ruled upon below. "It is well established that the burden is on the party alleging error to show it affirmatively by the record and that where the proof necessary for determination of the issues on appeal is omitted from the record, the appellate court must assume that the judgment below was correct and affirm."[7] Further,

> [a]ppellate procedure requires that where the transcript or record does not fully disclose what transpired at trial, the burden is on the complaining party to have the record completed in the trial court under the provisions of OCGA § 5-6-41 (f). When this is not done, there is nothing for the appellate court to review. Since this is a court for correction of errors of law, our decision must be made upon the record and not upon briefs of counsel.[8]

Accordingly, this error presents nothing for our review, and we must affirm the judgment of the trial court.

Even if we were able to review the trial court's ruling on the defendants' motions for retrial, it is unlikely that Bollinger and Shaw would be successful. This Court has expressly held that it is not error for a different judge from the one who presided over a defendant's trial to impose the sentence.[9]

*Judgment affirmed. Andrews, P. J., and Phipps, J., concur.*

DECIDED JANUARY 9, 2003.

*Ann C. Stahl*, for appellant (case no. A02A2006).
*Kelley A. Dial, Elizabeth H. Eason*, for appellant (case no. A02A2007).

---

[6] Due to the untimely death of the trial judge, a different judge presided over the defendants' sentencing.

[7] (Citation and punctuation omitted.) *Tahamtan v. Sawnee Elec. Membership Corp.*, 228 Ga. App. 485 (491 SE2d 918) (1997).

[8] (Citations, punctuation and footnotes omitted.) *Harris v. State*, 230 Ga. App. 403, 404 (2) (496 SE2d 277) (1998).

[9] *Gresham v. State*, 149 Ga. App. 320 (2) (254 SE2d 474) (1979).

*T. Joseph Campbell, District Attorney, Mickey R. Thacker, Assistant District Attorney*, for appellee.